UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSE LUIS MALDONADO, <br><br> Plaintiff, <br><br> v. <br><br> DISTRICT OF COLUMBIA, *et al.*, <br><br> Defendants. | Civil Action No. 11-1473 (BAH) <br><br> Judge Beryl A. Howell |

**MEMORANDUM OPINION**

Plaintiff Jose Luis Maldonado brings this action against the District of Columbia ("the District") and Metropolitan Police Department ("MPD") Officers D. Hong, L. Webb, A. Salleh, and other unknown officers (the "Defendant Officers"), seeking recovery for injuries allegedly sustained when the Defendant Officers arrested the plaintiff following an altercation on the streets of Washington, D.C. in August 2008. Second Am. Compl. ("SAC") ¶¶ 6–11, ECF No. 18. The plaintiff alleges four separate causes of action: use of excessive force (Count I) and unlawful arrest (Count II) in violation of the Fourth Amendment, as well as negligent supervision (Count III) and negligent failure to train (Count IV) by the District. *Id.* ¶¶ 36–56. The plaintiff seeks compensatory damages of not less than $250,000 and punitive damages of not less than $250,000. *Id.* at 8.

The District has filed a motion to dismiss, or in the alternative for summary judgment,[1] seeking to dismiss all claims against it. Def.'s Mot. to Dismiss or in the Alternative for Summ. J.

---

[1] As the District notes in its brief, the Motion to Dismiss was only made by the District because, at the time the motion was filed, the Defendant Officers had not yet been properly served with the Second Amended Complaint. *See* Mem. of P. & A. in Supp. of District's Mot. to Dismiss or in the Alternative for Summ. J. ("Def.'s Mem.") at 1, n.1, ECF No. 22-1. The Defendant Officers have not elected to join the District's motion. The plaintiff subsequently served the three named Defendant Officers on August 29, 2012. *See* Affs. of Process Server, ECF No. 35-1. The named Defendant Officers have filed an answer, *see* ECF No. 36, and are conducting discovery with the plaintiff, per the Scheduling Order, until May 31, 2013. *See* Minute Order dated Jan. 7, 2013.

1

("Def.'s Mot.") at 1, ECF No. 22. As to Counts I and II, the District argues that the plaintiff has failed to plead adequately that a government policy, practice, or custom caused the alleged constitutional violations, as required to secure municipal liability under 42 U.S.C. § 1983. *See* Mem. of P&A in Supp. of Def.'s Mot. to Dismiss ("Def.'s Mem.") at 5, ECF No. 22-1 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–94 (1978)); Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Def.'s Reply"), at 3, ECF No. 26. As to Counts III and IV, the District argues that the plaintiff failed to comply with D.C. CODE § 12-309, which requires a plaintiff to notify the Mayor of the District of Columbia "within six months after the injury or damage was sustained . . . of the approximate time, place, cause, and circumstances of the injury or damage." Def.'s Mem. at 7 (citing D.C. CODE § 12-309). Finally, the District contends that it is immune from the plaintiff's claim to punitive damages. *Id.* at 8–9. For the reasons discussed below, the Court grants in part and denies in part the District's motion to dismiss.

## I.  BACKGROUND

On or about August 15, 2008,[2] the plaintiff was walking with a group of co-workers along 7th Street, NW, in Washington, D.C. SAC ¶¶ 12–13. The plaintiff alleges that, while walking together, one member of the group named Jeff Kenny made "loud and disparaging comments regarding . . . a group of transvestites," and a verbal confrontation ensued. *Id.* ¶¶ 14–15. The plaintiff says that he told Kenny to leave the group alone, but as he "was in the midst of calming the situation, the transvestites inexplicably sprayed him with mace." *Id.* ¶¶ 16–17. The plaintiff was escorted to a nearby McDonald's to attempt to wash his eyes out with water, but this was unsuccessful, leaving the plaintiff "essentially blind and defenseless." *Id.* ¶¶ 19, 22. The plaintiff was then allegedly "led back outside to an escalating confrontation, then

---

[2] In the plaintiff's pre-suit notification letter, the plaintiff's counsel identifies the relevant date as August 16, 2008. *See* Letter from Raleigh W. Bynum, II to Adrian M. Fenty (Feb. 10, 2009) ("Notice Letter") at 1, ECF No. 22-2.

altercation" between certain members of his group and the group of transvestites that had allegedly sprayed the plaintiff with mace. *Id.* ¶ 20. The SAC alleges that the plaintiff then found himself "in the midst of a violent physical altercation between two parties involving multiple people." *Id.* ¶ 22. During this altercation, the plaintiff claims to have "shouted some profanities as he attempted to protect himself and retrieve personal items dropped in the melee, including monies, a work knife, and a phone." *Id.* ¶ 23.

The plaintiff says that a chase ensued, with members of his group pursuing the transvestites, but he claims that he did not participate in this chase "due mainly to his effective blindness." *Id.* ¶¶ 24–25. At this point, the plaintiff alleges that he was tackled by Defendant Officers and was arrested for assault with a deadly weapon (knife), assault on a police officer, and simple assault, and placed in a police transport van. *Id.* ¶¶ 26–27. The plaintiff also alleges that, following his detention, the Defendant Officers "became violent and excessively physical" while one of his associates—Marcus Moulcrie—tried to explain to the officers that the plaintiff had not been involved in the physical altercation. *Id.* ¶ 29. Relatedly, the plaintiff claims that Moulcrie tried to record the arrest on his cellular phone—which led to Moulcrie's arrest and the confiscation of his phone—and, after Moulcrie's phone was returned to him, "all saved pictures and video had been removed." *Id.* ¶¶ 30–31. The plaintiff alleges that he was taken out of the transport van and "assaulted and battered" by the Defendant Officers. *Id.* ¶ 32. In particular, while the plaintiff was in detention, he alleges that Defendant Officers "violently struck [him] in the rib area, twisted his arms, and . . . kicked him in the face, resulting in severe mouth trauma and tooth avulsion." *Id.* ¶ 33. He was then allegedly taken to George Washington Hospital for treatment. *Id.* ¶ 34. The charges of assault with a deadly weapon and assault on a police officer

were later dropped, and on January 26, 2009, the plaintiff was acquitted, at trial, of simple assault. *Id.* ¶ 35.

On February 10, 2009, the plaintiff, through counsel, sent a pre-suit notification letter to then-Mayor Adrian Fenty, which notified the District that, as a result of the events on August 16, 2008, the plaintiff "may assert civil claims for assault, battery, false imprisonment, negligence and/or intentional infliction of emotional distress." *See* Letter from Raleigh W. Bynum, II to Adrian M. Fenty (Feb. 10, 2009) ("Notice Letter") at 1, ECF No. 22-2. The plaintiff originally filed his Complaint on August 15, 2011. *See* Compl., ECF No. 1. After the District filed a motion to dismiss the Complaint on January 3, 2012, *see* ECF No. 5, the plaintiff filed an Amended Complaint on January 20, 2012, *see* ECF No. 9. The District once again filed a motion to dismiss the Amended Complaint on February 6, 2012, *see* ECF No. 10, and after seeking leave of the Court on March 19, 2012, *see* ECF No. 16, the plaintiff filed his Second Amended Complaint on March 29, 2012, *see* ECF No. 18.

The Second Amended Complaint states four separate causes of action. The first cause of action, brought pursuant to 42 U.S.C. § 1983, alleges that the Defendant Officers "wrongfully and unlawfully used excessive and unreasonable force" on the plaintiff in violation of the Fourth Amendment and that the District "approved and/or condoned the actions of the Defendant Officers," which the plaintiff claims "impute[s] [liability] to all Defendants." SAC ¶¶ 36–40. The second cause of action, also brought pursuant to 42 U.S.C. § 1983, alleges that the Defendant Officers "committed acts which deprived Plaintiff of his Constitutional rights to be free from an unreasonable seizure" in violation of the Fourth Amendment. *Id.* ¶¶ 42–43. As to both Counts I and II, the plaintiff alleges that, as a proximate result of the conduct alleged, he suffered "severe personal injuries," and "severe emotional distress and mental anguish." *Id.*

4

¶¶ 41, 44.  The third cause of action alleges that the District "created an unreasonable risk of harm to the Plaintiff by failing to supervise, control, or otherwise monitor the actions of its employees," which proximately resulted in "physical and mental injury, damages, and loss of liberty" to the plaintiff.  *Id.* ¶¶ 45–50.  The fourth cause of action alleges that the District "created an unreasonable risk of harm to the Plaintiff by failing to adequately train its employees," which resulted in the same injuries alleged in Count Three.  *Id.* ¶¶ 51–56.  Currently pending before the Court is the defendant District of Columbia's motion to dismiss, or in the alternative, motion for summary judgment.[3]  For the reasons discussed below, the Court grants in part and denies in part the District's motion.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[ ] [his or her] claims across the line from conceivable to plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* FED. R. CIV. P. 12(b)(6).  "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).  Instead, the complaint must plead facts that are more than "'merely consistent with' a defendant's liability."  *Id.* (quoting *Twombly*, 550 U.S. at 557).  "[T]he plaintiff [must] plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*; *accord Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012).  The Court "must

---

[3] The Court withheld decision on the District's motion to dismiss the Second Amended Complaint for several months while the parties resolved a dispute regarding the effectuation of service on the Defendant Officers.  This dispute required numerous status reports, one motion, and one status conference before the Defendant Officers were properly served in August 2012.  *See* Status Report at 1, ECF No. 35.  Despite the joinder of the Defendant Officers, the officers have apparently not elected to join the motion to dismiss currently pending before the Court.  Consequently, the plaintiff's arguments in his opposition brief regarding the potential qualified immunity available to the Defendant Officers, *see* Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") at 6–10, ECF No. 24-1, are irrelevant to deciding the instant motion to dismiss.

assume all the allegations in the complaint are true (even if doubtful in fact) . . . [and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." *Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 17 (D.C. Cir. 2008) (citations and internal quotation marks omitted).

The Federal Rules of Civil Procedure provide that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment," and if a motion is so converted, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d). "The decision to convert a motion to dismiss into a motion for summary judgment . . . is committed to the sound discretion of the trial court." *Flynn v. Tiede-Zoeller, Inc.*, 412 F. Supp. 2d 46, 50 (D.D.C. 2006). "In exercising this discretion, the 'reviewing court must assure itself that summary judgment treatment would be fair to both parties.'" *Bowe-Connor v. Shinseki*, 845 F. Supp. 2d 77, 85–86 (D.D.C. 2012) (quoting *Tele-Commc'ns of Key W., Inc. v. United States*, 757 F.2d 1330, 1334 (D.C. Cir. 1985)). Therefore, "[i]n converting the motion, district courts must provide the parties with notice and an opportunity to present evidence in support of their respective positions." *Kim v. United States*, 632 F.3d 713, 719 (D.C. Cir. 2011).

If extra-pleading evidence "is comprehensive and will enable a rational determination of a summary judgment motion," a district court will be more likely to convert to summary judgment, but "when it is scanty, incomplete, or inconclusive," the district court is more likely to decline to convert to summary judgment and permit further discovery. *See* 5C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE ("WRIGHT & MILLER") § 1366 (3d ed. 2012). Thus, there is no bright-line threshold for conversion under Rule 12(d); the touchstone is fairness and whether consideration of summary judgment is appropriate, in light of the nature of the

extra-pleading material submitted, the parties' access to sources of proof, and the parties' concomitant opportunity to present evidence in support or opposition to summary judgment. *See id.*; *see also, e.g.*, *White v. Vilsack*, No. 11-1763, 2012 WL 3715394, at *5 (D.D.C. Aug. 29, 2012) (declining to convert to summary judgment because "the current record is not sufficiently developed to allow a determination as to whether a genuine dispute of material fact exists").

### III.  DISCUSSION

At the outset, the Court concludes, in its discretion, not to convert the defendant's motion to dismiss into a motion for summary judgment.  In ruling on a motion to dismiss, a court may consider "the factual allegations set forth in the complaint, documents attached to or incorporated by reference in the complaint, and matters subject to judicial notice" without converting a motion to dismiss into a motion for summary judgment. *See Ruffin v. Gray*, 443 F. App'x 562, 563 (D.C. Cir. 2011) (internal quotation marks omitted).  The only document other than the Second Amended Complaint that the Court considers in deciding the District's instant motion is a copy of the plaintiff's pre-suit notification letter, which was incorporated by reference in the Second Amended Complaint.  *See* SAC ¶ 3.  This pre-suit notification letter is also the only document, other than the Second Amended Complaint itself, relied upon by either party.  Since neither party has presented evidence that would be remotely comprehensive enough to resolve the plaintiff's claims on a motion for summary judgment, it would be inappropriate to do so before the plaintiff has had an opportunity for discovery. *See, e.g.*, *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012) ("[S]ummary judgment is premature unless all parties have 'had a full opportunity to conduct discovery.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986))).

**A.     The Plaintiff Has Failed to Plead a Municipal Policy or Custom.**

Under 42 U.S.C. § 1983, it is unlawful for a person acting under color of law to deprive any other person of any federal constitutional or statutory rights.[4] The Supreme Court has held that the term "person" in § 1983 includes municipalities and other local government units, such as the District of Columbia. *See, e.g.*, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A municipality, however, "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691; *accord Jones v. Horne*, 634 F.3d 588, 600 (D.C. Cir. 2011). Therefore, in order to plead a § 1983 claim against a municipality, a plaintiff must not only allege a predicate violation of some right, privilege, or immunity secured by the Constitution and laws of the United States, *see* 42 U.S.C. § 1983, but must also allege "that the municipality's custom or policy caused the violation." *Warren v. District of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 123–24 (1992)).

As to the predicate constitutional violations, the Court first concludes that Count I of the Second Amended Complaint alleges an unconstitutional use of excessive force. *See* SAC ¶¶ 36–41. It is well settled that it is a violation of the Fourth Amendment for law enforcement officers to use excessive force "in the context of an arrest or investigatory stop of a free citizen." *Graham v. Connor*, 490 U.S. 386, 394–95 (1989). Whether a use of force is "excessive" depends upon a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks omitted). Taking all of the plaintiff's allegations as true at this stage of the proceedings, as the Court must, the plaintiff plausibly alleges that he was subjected

---

[4] 42 U.S.C. § 1983 provides that every person "who, under color of [state or D.C. law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."

to force that was excessive within the meaning of the Fourth Amendment. The alleged intrusion upon the plaintiff's Fourth Amendment interests is significant—he alleges that he incurred physical injuries that required hospitalization. *See* SAC ¶¶ 32–34. In comparison, according to the Second Amended Complaint, the countervailing governmental interests were moderate—the plaintiff posed no immediate threat to the arresting officers, the plaintiff was incapacitated at the time (both as a result of the handcuffs around his wrists[5] and the lingering effects of the mace), and the plaintiff was not resisting or evading arrest. *See, e.g.*, *Graham*, 490 U.S. at 396; *Oberwetter v. Hilliard*, 639 F.3d 545, 555 (D.C. Cir. 2011). Thus, even recognizing that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation," *Graham*, 490 U.S. at 397, the Court finds that the circumstances alleged by the plaintiff plausibly amount to the use of excessive force.

Count II of the plaintiff's Second Amended Complaint, captioned as "Unconstitutional Arrest/4th Amendment Violation," alleges that the plaintiff was "deprived . . . of his Constitutional rights to be free from an unreasonable seizure." SAC ¶ 43. The focal point of a false arrest claim is "whether the arresting officer was justified in ordering the arrest of the plaintiff." *Scott v. District of Columbia*, 101 F.3d 748, 754 (D.C. Cir. 1996). A plaintiff may not allege a § 1983 claim for false arrest "unless the arresting officer lacked probable cause to believe a crime was committed." *Id.*; *see also Barnhardt v. District of Columbia*, 723 F. Supp. 2d 197, 214 (D.D.C. 2010) ("To prevail [on a false arrest claim], a plaintiff must demonstrate

---

[5] The Court draws the reasonable inference that the plaintiff remained handcuffed while he was allegedly battered by the Defendant Officers because he alleges that he was struck "[w]hile detained." *See* SAC ¶ 33.

9

that the police acted without probable cause, in an objective constitutional sense, to effectuate his arrest." (internal quotation marks omitted)).[6]

In this case, the allegations of the Second Amended Complaint offer very few facts from which the Court could plausibly determine whether the arresting officers lacked probable cause when they arrested the plaintiff. The Court need not decide at this time whether the plaintiff has stated a predicate false arrest, however, because the plaintiff has failed to allege that his claimed injuries were caused by a government custom, policy, or practice. To survive a motion to dismiss, a municipal § 1983 claim must "coherently allege[] the existence of a broader municipal custom or practice that explains" the predicate constitutional violations. *Act Now to Stop War & End Racism Coal. v. District of Columbia*, 798 F. Supp. 2d 134, 154 (D.D.C. 2011); *see also Atchinson v. District of Columbia*, 73 F.3d 418, 422 (D.C. Cir. 1996) (holding that municipal § 1983 claim "must include some factual basis for the allegation of a municipal policy or custom"). In addition, a plaintiff must allege an "'affirmative link,' such that a municipal policy was the 'moving force' behind the constitutional violation." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (citation omitted).

The plaintiff has failed to plead any facts, other than the alleged predicate constitutional violations, that would plausibly suggest that the District had a policy or custom of encouraging or condoning excessive force or false arrests by its police officers. The plaintiff alleges that the officers were "acting under color of law," that the District "approved and/or condoned the actions of the Defendant Officers," and that "any and all liability on the part of Defendant

---

[6] The common-law cause of action for false arrest is essentially identical to a cause of action for false arrest under the Fourth Amendment. *See Dingle v. District of Columbia*, 571 F. Supp. 2d 87, 95 (D.D.C. 2008) ("Common-law and constitutional claims of false arrest are generally analyzed as though they comprise a single cause of action."); *see also Barnhardt*, 723 F. Supp. 2d at 214 ("There is no real difference as a practical matter between false arrest and false imprisonment." (citations and internal quotation marks omitted)). So for the purposes analyzing the plaintiff's false arrest claim, the Court draws from case law on both causes of action.

Officers is imputed to all Defendants." SAC ¶ 40. The plaintiff also alleges that, at all times relevant to this action, the Defendant Officers were acting "under color of the statutes, ordinances, regulations, policies, and customs of the District of Columbia." *Id.* ¶ 11. These allegations, however, recite legal conclusions, not facts. As a result, the plaintiff's causes of action under 42 U.S.C. § 1983 (Counts I and II) must fail against the District. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)); *see also City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy . . . .").

### B. The Plaintiff Substantively Complied with the District of Columbia Pre-Suit Notification Provision

The District's sole argument offered in support of dismissing the plaintiff's common-law causes of action is that the plaintiff failed to give adequate notice of his claims under the District of Columbia's mandatory pre-suit notification provision, D.C. CODE § 12-309. *See* Def.'s Mem. at 7–8. That provision states, in relevant part, that:

> An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage.

D.C. CODE § 12-309. "The purpose of § 12-309 is to '(1) protect the District of Columbia against unreasonable claims and (2) to give reasonable notice to the District of Columbia so that the facts may be ascertained and, if possible, deserving claims adjudicated and meritless claims resisted.'" *R. v. District of Columbia*, 370 F. Supp. 2d 267, 271 (D.D.C. 2005) (quoting *Pitts v. District of Columbia*, 391 A.2d 803, 807 (D.C.1978)).

11

At the outset, the Court notes the District's passing reference to the fact that notice must be timely under D.C. CODE § 12-309. *See* Def.'s Mem. at 7–8. The District, however, does not actually contend that the plaintiff's notice was untimely in this case. In fact, the District's statement of undisputed material facts admits that "[o]n February 10, 2009, Plaintiff provided a letter . . . making allegations against the District of Columbia." Statement of Material Facts as to Which There Is No Genuine Dispute ("Def.'s Facts") ¶ 2, ECF No. 22-4.[7] The Court notes, however, that although the plaintiff's letter is dated February 10, 2009, it is only stamped as received by the District on February 18, 2009, which would have been outside of the statutory six-month period. *See* Notice Letter at 1. This fact is potentially important, since "sending notice to the District within the six-month statutory period is insufficient" because "§ 12-309 'requires that the District *receive* written notice within six months of the injury giving rise to the claim.'" *George v. Dade*, 769 A.2d 760, 766 n.6 (D.C. 2001) (emphasis added) (quoting *DeKine v. District of Columbia*, 422 A.2d 981, 985 (D.C. 1980)).

The Court need only examine this timeliness issue *sua sponte* if § 12-309 is a jurisdictional requirement. It remains unclear, however, whether non-compliance with § 12-309 acts as a jurisdictional bar. The D.C. Court of Appeals has clearly held that non-compliance with § 12-309 is an affirmative defense that must "be 'set forth affirmatively' in the answer to the complaint, and . . . 'may be waived if not promptly pleaded.'" *Jaiyeola v. District of Columbia*, 40 A.3d 356, 361 (D.C. 2012) (footnotes omitted) (quoting D.C. Super. Ct. R. Civ. P. 8(c) and *Feldman v. Gogos*, 628 A.2d 103, 104 (D.C. 1993)). The fact that non-compliance with § 12-309 may be waived makes it is akin to a failure to exhaust administrative remedies, which is generally a non-jurisdictional affirmative defense despite the fact that exhaustion is a condition

---

[7] This is essentially an admission that the pre-suit notice was timely, since February 10, 2009 was indisputably within six months of the incident that gave rise to the plaintiff's claims.

precedent to bringing suit. *See, e.g.*, *Artis v. Bernanke*, 630 F.3d 1031, 1034 n.4 (D.C. Cir. 2011). Additionally, the weight of authority in this Circuit is that § 12-309 is non-jurisdictional. *See Brown v. United States*, 742 F.2d 1498, 1506 (D.C. Cir. 1984) (holding that § 12-309 is "simply a penalty for noncompliance"); *Dellums v. Powell*, 566 F.2d 216, 229 (D.C. Cir. 1977) ("Nor is failure to give [§ 12-]309 notice a jurisdictional bar to suit [because] if such failure is not asserted as an affirmative defense it is waived.").[8] Accordingly, the Court now holds that compliance with § 12-309 is not a jurisdictional requirement, and therefore the Court will not assess the timeliness of the plaintiff's pre-suit notice because it has not been raised by the District.[9] The Court will, however, address the District's argument that the plaintiff failed to comply with § 12-309 because the plaintiff's "letter does not put the District on notice of Plaintiff's claims for negligent supervision and negligent training." Def.'s Mem. at 8.

"To satisfy the requirements of § 12-309, an individual's written notice must 'disclose *both* the factual cause of the injury and a reasonable basis for anticipating legal action as a consequence.'" *Kennedy v. District of Columbia*, 519 F. Supp. 2d 50, 58 (D.D.C. 2007) (quoting *Powell v. District of Columbia*, 645 F. Supp. 66, 69 (D.D.C. 1986)); *see also Washington v. District of Columbia*, 429 A.2d 1362, 1366 (D.C. 1981). The District of Columbia Court of Appeals "has long held that 'although strict compliance with § 12-309's requirement that timely notice be given to the District is mandatory, greater liberality is

---

[8] *See also Jones v. District of Columbia*, 879 F. Supp. 2d 69, 76 n.4 (D.D.C. 2012) (Collyer, J.) ("[F]ailure to comply with § 12-309 is not jurisdictional."); *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 209 n.32 (D.D.C. 2012) (Howell, J.); *Equal Rights Ctr. v. District of Columbia*, 741 F. Supp. 2d 273, 280 (D.D.C. 2010) (Kessler, J.) ("[T]he notice requirement of Section 12-309 is not jurisdictional."); *Blocker-Burnett v. District of Columbia*, 730 F. Supp. 2d 200, 202 n.2 (D.D.C. 2010) (Friedman, J.); *R. v. District of Columbia*, 370 F. Supp. 2d at 270 (Roberts, J.). *Contra Sperling v. Wash. Metro. Area Transit Auth.*, 542 F. Supp. 2d 76, 81 (D.D.C. 2008) (agreeing with both parties that § 12-309 is a jurisdictional limitation).

[9] By admitting in its statement of undisputed facts that the plaintiff provided timely notice, *see* Def.'s Facts ¶ 2, and by failing to contend otherwise in its motion to dismiss, the District has arguably waived its ability to object to the plaintiff's pre-suit notification letter on timeliness grounds.

appropriate with respect to the content of the notice.'" *Enders v. District of Columbia*, 4 A.3d 457, 468 (D.C. 2010) (quoting *Wharton v. District of Columbia*, 666 A.2d 1227, 1230 (D.C. 1995)). "[W]ith respect to the details of the statement giving notice, precise exactness is not absolutely essential." *Washington*, 429 A.2d at 1365 (internal quotation marks omitted). "[W]here the District is given facts that would allow it to comprehend through a reasonable investigation the circumstances underlying the claim, the notice is sufficient." *Enders*, 4 A.3d at 468; *see also Shaw v. District of Columbia*, No. 05-1284, 2006 WL 1274765, at *7 (D.D.C. May 8, 2006) ("As a legal matter, § 12-309 simply does not require the specificity demanded by Defendant—i.e., identification of the precise legal theory upon which a plaintiff seeks relief.").

The District contends that, because the plaintiff's notice letter did not specifically mention the claims of negligent supervision and negligent training, these claims must fail for failure to comply with D.C. CODE § 12-309. *See* Def.'s Mem. at 7–8. The plaintiff's letter, however, states that "Mr. Maldonado may assert civil claims for assault, battery, false imprisonment, negligence and/or intentional infliction of emotional distress." Notice Letter at 1. The letter specifically lists "negligence" as a possible claim the plaintiff would raise, and negligent supervision and negligent failure to train are both varieties of negligence that are reasonably likely to be alleged against the District arising out of the arrest by MPD officers as described in the plaintiff's letter.[10] Though the letter does not specifically list "negligent training" or "negligent supervision" as potential causes of action, such "precise exactness is not absolutely essential." *Washington*, 429 A.2d at 1365 (internal quotation marks omitted). The plaintiff's letter adequately describes "the approximate time, place, cause, and circumstances of

---

[10] The District reads the letter's use of the noun "negligence" to mean the adjective "negligent," and thereby merely to modify the phrase "infliction of emotional distress," rather than to list a separate possible cause of action. *See* Def.'s Mem. at 8 ("The letter only addresses civil claims for assault, battery, false imprisonment and negligent and/or intentional infliction of emotion distress."). The letter's crystal clear reference to "negligence," however, illustrates that the District's reading is mistaken. *See* Notice Letter at 1.

14

the injury or damage," D.C. CODE § 12-309, and so the Court concludes that the plaintiff substantively complied with the pre-suit notification requirements of the statue.

### C. The Plaintiff May Not Seek Punitive Damages from the District Absent Statutory Authority.

The plaintiff seeks punitive damages from the "defendants," SAC at 8, without specifically stating whether he seeks punitive damages against the District of Columbia. Under District of Columbia law, punitive damages are not available against the District absent "extraordinary circumstances" or express statutory authorization. *See, e.g.*, *Atchinson*, 73 F.3d at 425 (holding that punitive damages "are not available against municipalities . . . absent extraordinary circumstances, under District of Columbia law"); *Smith v. District of Columbia*, 336 A.2d 831, 832 (D.C. 1975) (per curiam) ("[T]here can be no recovery of punitive damages against a municipality absent a statute expressly authorizing it."); *see also City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 260 n.21 (1981) ("The general rule today is that no punitive damages are allowed unless expressly authorized by statute.").[11]

The plaintiff has not pleaded any facts that could even arguably rise to the level of "extraordinary circumstances," such as a situation "where a jurisdiction's taxpayers are directly responsible for perpetrating the policies that caused the plaintiff's injuries," or "where a municipality or its policymakers have intentionally adopted the unconstitutional policy that caused the damages in question." *See Daskalea v. District of Columbia*, 227 F.3d 433, 447 (D.C. Cir. 2000). Nor does the plaintiff point to any statute authorizing punitive damages against the District, and for good reason: "There is no such statute in this jurisdiction." *Smith*, 336 A.2d at

---

[11] Even if the Court did not dismiss the § 1983 claims against the District, *see supra* Part III.A, the plaintiff would be unable to seek punitive damages against the District under those claims because "a municipality is immune from punitive damages" under § 1983. *City of Newport*, 453 U.S. at 271.

832. Accordingly, insofar as the plaintiff seeks punitive damages from the District, that prayer for relief must be dismissed.

## IV. CONCLUSION

As the foregoing discussion concludes, the plaintiff has failed to plead facts that would establish a municipal policy or custom that caused his alleged injuries, and therefore the plaintiff's § 1983 claims (Counts I and II) must be dismissed against the defendant District. Furthermore, due to the plaintiff's failure to plead "extraordinary circumstances," his claims for punitive damages against the District must also be dismissed. The plaintiff's common-law claims for negligent supervision (Count III) and negligent failure to train (Count IV), however, may go forward because the plaintiff substantively complied with the District of Columbia's pre-suit notification provision.

Additionally, since the remaining federal claims against the Defendant Officers provide the Court with original jurisdiction over this case pursuant to 28 U.S.C. § 1331, the Court will retain jurisdiction over the common-law claims alleged against the District pursuant to the Court's "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form a part of the same case or controversy under Article III." 28 U.S.C. § 1367(a).

An appropriate Order accompanies this Memorandum Opinion

Date: February 21, 2013

      /s/ *Beryl A. Howell*
      BERYL A. HOWELL
      United States District Judge